

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-75,105-02

### EX PARTE RANDALL WAYNE MAYS, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS
### CAUSE NO. B-15,717 IN THE 392ND JUDICIAL DISTRICT COURT
### HENDERSON COUNTY

*Per curiam.* KELLER, P.J., filed a dissenting opinion in which SLAUGHTER, J., joined. YEARY, J., filed a dissenting opinion in which KELLER, P.J., joined. Keel, J., dissented.

### O P I N I O N

This is subsequent application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071, Section 5.[1]

In May 2008, a jury convicted Applicant of capital murder for the shooting death of Henderson County Deputy Sheriff Tony Ogburn. *See* TEX. PENAL CODE § 19.03(a)(1).

---

[1] Unless otherwise indicated, all references in this opinion to Articles refer to the Texas Code of Criminal Procedure.

The jury answered the special issues submitted pursuant to Article 37.071, and the trial court, accordingly, sentenced Applicant to death. This Court affirmed Applicant's conviction and sentence on direct appeal. *Mays v. State*, 318 S.W.3d 368 (Tex. Crim. App. 2010).

Applicant thereafter filed in the trial court his initial post-conviction application for a writ of habeas corpus raising nine claims, including a claim that the execution of a mentally ill person was not constitutionally permissible. After reviewing the merits of the claims, this Court denied relief. *Ex parte Mays*, No. WR-75,105-01 (Tex. Crim. App. Mar. 16, 2011) (not designated for publication).

Applicant also filed in federal court a petition for a writ of habeas corpus in which he alleged, inter alia, that he should not be executed because he is intellectually disabled. *See Atkins v. Virginia*, 536 U.S. 304 (2002). The federal district court denied relief, and the Fifth Circuit denied a certificate of appealability. *Mays v. Director, Tex. Department of Criminal Justice-Correctional Institutions Division*, 2013 U.S. Dist. LEXIS 177921 (E.D. Tex., Dec. 18, 2013); *Mays v. Stephens*, 757 F.3d 211 (5th Cir. 2014). The United States Supreme Court denied certiorari. *Mays v. Stephens*, 574 U.S. 1082 (2015).

When Applicant was set for execution, he challenged his competency to be executed under Article 46.05. The trial court denied the challenge, but this Court determined that Applicant made a sufficient threshold showing for the appointment of experts. *Mays v. State*, 476 S.W.3d 454 (Tex. Crim. App. 2015). The trial court later determined that Applicant was competent to be executed, and this Court affirmed that

decision. *Mays v. State*, No. AP-77,055 (Tex. Crim. App. June 5, 2019) (not designated for publication). Applicant again challenged his competency to be executed when he was set for execution a second time. The trial court denied the challenge. Applicant's appeal of the trial court's decision, *Mays v. State*, No. AP-77,093, is pending in this Court.

In April 2020, Applicant filed in the trial court this subsequent application for a writ of habeas corpus. He also filed a motion for a stay of execution in this Court in May 2020. In his subsequent habeas application, he raises four claims challenging the validity of his conviction and resulting sentence. Applicant asserts in one of the claims (Claim 1) that he is intellectually disabled and ineligible for the death penalty under *Atkins*. We determined that the intellectual disability claim satisfied the requirements of Article 11.071, Section 5. *Ex parte Mays*, No. WR-75,105-02 (Tex. Crim. App. May 7, 2020) (not designated for publication). We stayed Applicant's execution, and we remanded the application to the trial court for a review of the merits of the intellectual disability claim. *Id.*

In December 2022, the trial court held a hearing in which the parties made brief statements and submitted exhibits, including Applicant's educational records and reports from defense experts Dr. Diane Mosnik and Dr. Joan Brennan (formerly Mayfield) and State's expert Dr. Antoinette McGarrahan.[2] In her report dated October 3, 2019, Mosnik

---

[2] Applicant also submitted numerous written declarations from family members and former classmates and teachers. These declarations were signed "under penalty of perjury," but were not notarized. However, Mosnik states in her report that she "conducted direct interviews" with seven of the declarants: Dorothy and John Hillis; Sherrie and Lonnie Ross; Curtis Corley;

concluded that Applicant meets the criteria for a diagnosis of mild intellectual disability "according to the diagnostic criteria of both the Diagnostic and Statistical Manual of Mental Disorders-5th edition and the *Intellectual Disability: Definition, Classification, and Systems of Supports (11th Edition)* manual published in 2010 by the American Association on Intellectual and Developmental Disabilities."[3]  In her declaration dated October 19, 2022, Brennan concluded that "regardless [of] the definition used (DSM-5-TR or AAIDD), . . . [Applicant] meets [the] criteria for a diagnosis of Intellectual Disability."[4]  In her report dated November 9, 2022, McGarrahan said that she "cannot controvert the conclusion and opinion of Dr. Mosnik that [Applicant] meets the full diagnostic criteria for intellectual disability according to current standards (DSM-5-TR and AAIDD)."

On February 10, 2023, the trial court signed "Agreed Findings of Fact and Conclusions of Law" recommending that relief be granted on Applicant's intellectual disability claim.  "Based on the record before the Court, and with the agreement of both

---

Emily Whatley; and Sandra Dees Ruberdeau.

[3]  These manuals are referred to as the "DSM-5" and the "AAIDD."  The *Diagnostic and Statistical Manual of Mental Disorders,* Fifth Edition, Text Revision, which is the 2022 update to the DSM-5, is referred to as the "DSM-5-TR."

[4]  Brennan previously conducted a neuropsychological evaluation of Applicant in 2009 and diagnosed him with "Dementia NOS secondary to chronic amphetamine and related sympathomimetic abuse" and "Depressive Disorder, NOS."  She declined to diagnose Applicant with intellectual disability at that time.  However, in 2022, she reviewed additional information and "supplement[ed her] prior diagnosis" to include intellectual disability.  Brennan signed her 2022 declaration "under penalty of perjury," but it is not notarized.

the State and the Applicant," the trial court concluded that Applicant "has intellectual disability" under the "prevailing medical standards for diagnosing intellectual disability[,]" specifically citing the DSM-5-TR.[5] The trial court concluded that Applicant "has shown by clear and convincing evidence that no rational factfinder would fail to find him intellectually disabled." *See Ex parte Blue*, 230 S.W.3d 151, 163 (Tex. Crim. App. 2007).

We agree that Applicant meets the diagnostic criteria for intellectual disability under *Atkins* and *Moore*. *Moore v. Texas*, 137 S. Ct. 1039, 1044 (2017); *Moore v. Texas*, 139 S. Ct. 666 (2019). Based upon the trial court's findings and conclusions and our own review, we grant relief by reforming Applicant's sentence of death to a sentence of life imprisonment without parole.

Applicant alleges in his remaining claims that: racial bias tainted his conviction and death sentence (Claim 2); his jury engaged in prejudicial misconduct (Claim 3); and he was improperly interrogated in violation of his constitutional rights (Claim 4). With regard to these claims, we find that Applicant has failed to satisfy the requirements of Article 11.071, Section 5. Accordingly, we dismiss these claims as an abuse of the writ

---

[5] In *Petetan v. State*, 622 S.W.3d 321, 325 (Tex. Crim. App. 2021), we reiterated that we apply "contemporary clinical standards" to assess intellectual disability. At that time, the "contemporary clinical standard" was the DSM-5 that was published in 2013. However, the newest version of this standard is the DSM-5-TR that was published in 2022. At the time we wrote *Petetan*, the DSM-5 required "deficits in intellectual functioning that are directly related to the intellectual impairments[.]" 622 S.W.3d at 333. The DSM-5-TR appears to remove this "relatedness" requirement.

without reviewing the merits.

IT IS SO ORDERED THIS THE 27th DAY OF MARCH, 2024.

Publish